## W. WILLIAMS *et al.* v. THE STATE.

1. ASSAULT WITH INTENT TO MURDER. — Trying an assault with intent to murder, it was incumbent on the court below, whether asked or not, to give in charge to the jury, as part of the law of the case, the legal signification of the term *malice*. A naked definition of murder, etc., without an exposition of the term "malice," is not sufficient. The rulings in *Anderson* v. *The State*, 1 Texas Ct. App. 730, to the same effect, quoted with approval.

2. SAME — MALICE. — There being no statutory definition of malice aforethought, express malice, or implied malice, the Code itself directs that resort be had to the common law for the legal signification of these terms.

3. EVIDENCE. — Though competent to impeach the credit of a witness by proof that he has made statements, out of court, relevant to the point at issue, and contradictory of his testimony, yet the predicate for such proof must first be laid by asking the witness specifically whether he had made such contradictory statements at the time and place, and to the person supposed to be involved. No predicate is laid by asking him whether he had ever made the contradictory statement imputed to him, or whether he had always told the matter as he had testified to it.

4. SAME — PREDICATE. — When such contradictory proof is objected to and admitted, and exception is reserved, the record should show that the predicate was laid.

APPEAL from the District Court of Guadalupe. Tried below before the Hon. E. LEWIS.

A sufficient statement of the facts to elucidate the rulings will be found in the opinion.

The jury assessed against the appellants three years in the penitentiary.

*Henderson & Neal*, for the appellants.

*George McCormick*, Assistant Attorney General, for the State.

ECTOR, P. J.   In this case William Williams, Robert Goins, Mc. Williams, and Eugene Pettus were indicted in the District Court of Guadalupe County, for an assault with intent to murder one Samuel Newton.   The defendants were tried at the November term of said court.   The appellants were convicted, and the other two defendants acquitted.   Appellants have assigned a number of errors, a portion of which, only, we will specially notice in this opinion.

The fourth error assigned is :   " That the court erred in failing to charge the definition of malice, either express or implied."   The court first instructed the jury as follows :

" Every person with a sound memory and discretion who shall unlawfully kill any reasonable creature in being within this state, with malice aforethought, either express or implied, shall be deemed guilty of murder.   Murder is distinguishable from every other species of homicide by the absence of the circumstances which reduce the offense to negligent homicide or manslaughter, or which excuse or justify the homicide."

The court further instructed the jury, if they "find the defendant guilty of an assault with intent to murder, as charged in the indictment, they will so say, and assess the punishment at confinement in the penitentiary for a term not less than two nor more than seven years."   This is all that is said in the charge as to murder, or as to an assault with intent to murder.   In no portion of the charge does the court instruct the jury as to the legal signification of malice.

In the case of *Anderson* v. *The State*, 1 Texas Ct. App.

730, this court says : " But, as to the law governing a trial of one accused of having committed an assault with intent to murder, the intention with which the assault is made is an important inquiry.  The intention must be determined by the jury from the evidence.  That the jury may apply the evidence, it is indispensable that they should be correctly informed as to the law, or rules of law, by which they were to be governed in applying the evidence to the case.  *  *  *  With reference to the present case, it became a material inquiry for the jury to ascertain from the evidence the intention of the accused, with which the assault was made.  It became necessary that the court should have instructed them what acts would constitute murder, and, as there can be no murder without malice, they should have been informed as to the meaning of the term ' malice,' and the means by which its existence was to be established.  In other words, the judge, in charging the jury, should have defined murder ; in doing which he would have included a definition of malice.  And, the Penal Code having provided that, ' except when a word, term, or phrase is specially defined, all the words used in this Code are to be taken and construed in the sense in which they are understood in common language, taking into consideration the context and subject-matter relative to which they are employed ' (Pasc. Dig., art. 1630), it would be sufficient to give the term ' malice ' the signification given to it in common use, defined by Mr. Bouvier, as applied to criminal law, to be ' a wicked intention to do an injury,' and by Mr. Webster, ' extreme enmity of heart, or malevolence ; a disposition to injure others without cause, or from personal gratification, or from a spirit of revenge ; unprovoked malignity or spite.' "

Again, in the case of *Smith* v. *The State*, the court says : " In no portion of the charge does the court define ' an assault and battery,' or ' an assault with intent to murder,' or instruct them as to the legal signification of ' malice.'

" We do not hold that it is requisite for the court, in defining offenses, to follow the definition literally in the words of the statute, but the jury should be informed of the nature, elements, and ingredients composing the crime." 1 Texas Ct. App. 516.

The Code does not define what is meant by " malice aforethought," " express malice," or " implied malice." But it is provided that " the principles of the common law shall be the rule of construction when not in conflict with the Penal Code or Code of Criminal Procedure, or with some other written statute of the state."

The charge of the court was excepted to at the time, which appears by bill of exceptions. In the case of *Marshall* v. *The State,* 40 Texas, 200, our Supreme Court hold that it is the duty of the judge, on the trial of a criminal cause, to distinctly set forth the law applicable to the case, and that this is not accomplished by simply announcing the general principles of law defining the particular offense charged. In that case, as in the case before us, the defendant was indicted for an assault with intent to murder, and the charge of the court, which was excepted to, gave the statutory definition of murder; and the court, Roberts, C. J., delivering the opinion, says : " If this charge is proper in this case, it would be equally so in every other case of assault with intent to murder, however variant the facts might be from those in this."

Another error assigned is that " the court erred in permitting the testimony of the witness Springs to go to the jury. During the trial in the District Court the witness Springs was placed on the stand by the prosecution, to impeach the testimony of Mrs. Williams, a witness for defendants. He testified as follows : " That Mrs. Williams, at the house of *Mrs. Davidson,* on the Sunday after the difficulty, spoke of the boys ; called no names

except William; she said nothing about cartridges, but said William thought he was shot on the night of the difficulty at Newton's; that William wore a pair of leather pants, and they obstructed the ball; that William said he thought he was shot, or he would have killed every Newton on the place. To all which testimony of the witness Springs the defendant objected, and the court overruled the objection, as is shown by a bill of exceptions.

We see nothing in the statement of facts or in the entire record that, under the rules of evidence, would render such testimony admissible. From the statement of facts it appears that Mrs. Williams said she " was at the house of *Mrs. Davidson* on Sunday after the firing; cannot remember having then said that the boys went over to the party at Sam Newton's, and shot off all their ammunition and came to my house after more." She said that she had said nothing upon the subject at said time, and said nothing about the boys going to Sam Newton's at the time of the firing, except that the boys had been arrested for shooting into Sam Newton's house.

One of the modes of impeaching the credit of a witness is by proof of self-contradiction. Mr. Greenleaf says: " The credit of a witness may also be impeached by proof that he has made *statements out of court contrary to what he has testified at the trial.* But it is only on such matters as are relevant to the issue that the witness can be contradicted. And, before this can be done, it is generally held necessary, in the case of verbal statements, first to ask him as *to the time, place,* and *person* involved in the supposed contradiction. It is not enough to ask him the general question whether he ever said so and so, nor whether he has always told the same story; because it may frequently happen that upon the general question he may not remember whether he has so said; whereas, when his attention is called to

particular circumstances and occasions, he may recollect and explain what he has formerly said." 1 Greenl. on Ev. 462.

When testimony is offered to contradict a witness in this manner, and it is objected to, and a bill of exception taken to the rulings of the court by the party objecting, the record should show that the party offering such testimony brought himself clearly within the rule as above laid down by Mr. Greenleaf. There is nothing in the record to show that she was asked, when on the stand, if she did not state at Mrs. Davidson's house, on the Sunday evening after the difficulty, in the presence of the witness Springs, that William thought he was shot on the night of the difficulty at Newton's, that William wore a pair of leather pants and they obstructed the ball, and that William thought he was shot or he would have killed every Newton on the place, etc.

In a case involving the liberty of the defendants we cannot give our sanction to a conviction obtained when such improper evidence as that given by the witness Springs was allowed to go to the jury. This testimony was of such a character that it would be impossible to deprive it of its damaging effect by the charge of the court telling the jury that they were not to consider it for any other purpose but to impeach the witness Mrs. Williams.

We believe that the other errors assigned are not well taken. The judgment of the District Court as to the appellants is reversed and the cause remanded.

*Reversed and remanded.*